# IN THE COURT OF APPEALS OF IOWA

No. 20-1134
Filed November 4, 2020

**IN THE INTEREST OF N.D.,**
**Minor Child,**

**M.D., Father,**
        Appellant.

_____

        Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

        A father appeals from the order terminating his parental rights to the child.

**AFFIRMED**.

        Michael M. Lindeman of Lindeman Law, Cedar Rapids, for appellant father.

        Thomas J. Miller, Attorney General, and Chandlor Collins and Ellen Ramsey-Kacena, Assistant Attorneys General, for appellee State.

        Kimberly A. Opatz of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.

        Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

When N.D.'s mother arrived at the hospital to prematurely give birth to N.D. in September 2019, the mother tested positive for cocaine. While the mother was staying in the hospital, hospital staff found a razor blade and cocaine residue in the bathroom of the mother's room in the neonatal intensive care unit. Based on these circumstances, the Iowa Department of Human Services (DHS) sought a safe placement for the child. The child's biological father was not a placement option, as he was in prison. With the parents not being safe placement options, the child was removed from the parents' care and placed with the child's maternal grandfather.

Believing reunification efforts had failed, the State petitioned to terminate the parental rights of the mother, the legally established father,[1] and the biological father. After a hearing, the juvenile court terminated the rights of all three parents. Only the biological father appeals.[2] He raises three arguments on appeal: (1) the State failed to prove statutory grounds for termination; (2) it was not in the child's best interests to terminate the father's rights; and (3) the father should have been given an additional six months to work toward unification.

Our review of a termination-of-parental-rights proceeding is de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). On de novo review, "[w]e are not bound by the juvenile court's factual findings, but we do give them weight, especially in

---

[1] The mother was married at the time the child was born, making her husband the legally established father. *See* Iowa Code § 252A.3(4) (2019). The mother's husband is not the biological father of the child.

[2] For ease of reference, we will hereafter refer to the biological father simply as "the father."

assessing the credibility of witnesses." *Id.* (quoting *In re A.M.,* 843 N.W.2d 100, 110 (Iowa 2014)).

The father's rights were terminated pursuant to Iowa Code section 232.116(1)(h) (2020), which requires proof of the following:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The father challenges only the fourth element, claiming the child could have been returned to his care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). We have no hesitation in rejecting this challenge, as the father was in prison at the time of the termination hearing, so the child could not be placed with him. The State proved the statutory grounds for termination by clear and convincing evidence.

Turning to the father's challenge to the finding that termination of his rights is in the child's best interests, we note the father had been incarcerated for the entire life of the child, who was ten months old at the time of the termination hearing. The father had never met the child. Following release from the hospital, the child has lived the child's entire life in the home of the child's maternal grandfather. In determining whether termination of a parent's rights is in the child's best interests, we "give primary consideration to the child's safety, to the best

placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (quoting Iowa Code section 232.116(2)). Here, the child is integrated into the grandfather's home and looks to the grandfather as the child's primary parental figure. *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting a child's integration into and favorable adjustment to the relative's home supports finding termination is in the child's best interests (citing Iowa Code § 232.116(2)(b))). The grandfather is willing to adopt the child, which also contributes to our conclusion that termination is in the child's best interests. *See id.* (noting relatives' expressed desire to adopt supports finding termination is in the child's best interests (citing Iowa Code section 232.116(2)(c))). On our de novo review, we agree that termination of the father's parental rights is in the child's best interests.

Turning to the last issue, the father argues he should be given an additional six months to work toward reunification. *See* Iowa Code § 232.104(2)(b). In support of this argument, the father points to the classes he has taken in prison, his anticipation of being paroled to a residential correctional facility the week following the termination hearing, and his plans to transition out of the residential correctional facility upon obtaining housing and employment.

To begin our discussion of his arguments, we first note that, in order to grant the father's request for an additional six months to work toward reunification, Iowa Code section 232.104(2)(b) requires that we be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will

no longer exist at the end of the additional six-month period." After our de novo review, we cannot identify any specific factors, conditions, or expected behavioral changes that cause us to determine the child could be placed in the father's home within the six-month period following the termination hearing. The father's position is built on a series of "ifs" that speculate on his parole date, his successful transition to a residential correctional facility, his avoidance of parole violations, his success in obtaining housing and employment, his ability to show that he is capable of providing a safe and stable home for the child, and his ability to otherwise effectively parent the child. We are not willing to gamble the child's future on this speculation. *See A.M.*, 843 N.W.2d at 112 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (quoting *P.L.*, 778 N.W.2d at 41)).

We acknowledge there may be cases with an incarcerated parent in which an additional six months may be warranted when the parent expects to be released soon and has a history of stability that was momentarily disrupted by a brief stint of incarceration. However, here the father was forty-nine years old, had spent twenty-five of the last twenty-seven years of his life in prison, was sent back to prison for parole violations in the past, and, since initially being sent to prison at the age of twenty-two, never had a continuous stretch of time out of prison of longer than fourteen months. Under these circumstances, the father has no history of stability and will have his work cut out for him trying to stabilize his own life without the added responsibilities of caring for a young child. Therefore, we cannot

conclude the need for placement away from the father's home would no longer exist if the father was granted an additional six months to work toward unification.

Following our de novo review, we agree with the juvenile court's decision terminating the father's parental rights.

**AFFIRMED**.